# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 6878 | **DATE** | 4/23/2003 |
| **CASE TITLE** | OBLIX, INC. vs. FELICIA FERGUSON WINIECKI | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  Enter memorandum opinion and order. Oblix's motion for summary judgment and to dismiss is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | **Document Number** |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | APR 24 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 16 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | LG | courtroom deputy's initials | date mailed notice | |
| | | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

OBLIX, INC. )
)
    Plaintiff, )
)
    v. )
)
FELICIA FERGUSON WINIECKI, )
)
    Defendant. )
_____)
)
FELICIA FERGUSON WINIECKI, )
)
    Counter-Plaintiff, )
)
    v. )
)
OBLIX, INC., )
)
    Counter-Defendant. )

**DOCKETED**

APR 2 4 2003

Case No. 02 C 6878

Honorable John W. Darrah

## MEMORANDUM OPINION AND ORDER

Plaintiff, Oblix, Inc. ("Oblix"), filed a complaint seeking enforcement of an arbitration agreement between it and Defendant, Felicia Ferguson Winiecki ("Winiecki"). Winiecki filed a counterclaims against Oblix. Oblix now moves for summary judgment and to dismiss pursuant to Federal Rule of Civil Procedure 56.

For the reasons that follow, Oblix's Motion for Summary Judgment and to Dismiss is denied.

## LEGAL STANDARD

Summary judgment is appropriate when there remains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Cincinnati Ins. Co.*

16

*v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146, 150 (7th Cir. 1994). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Thus, although the moving party on a motion for summary judgment is responsible for demonstrating to the court why there is no genuine issue of material fact, the non-moving party must go beyond the face of the pleadings, affidavits, depositions, answers to interrogatories, and admissions on file to demonstrate through specific evidence that there remains a genuine issue of material fact and show that a rational jury could return a verdict in the non-moving party's favor. *Celotex*, 477 U.S. at 322-27; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254-56 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 923 (7th Cir. 1994).

Disputed facts are material when they might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 507-08 (7th Cir. 1992). When reviewing a motion for summary judgment, a court must view all inferences to be drawn from the facts in the light most favorable to the opposing party. *Anderson*, 477 U.S. at 247-48; *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999). However, a metaphysical doubt will not suffice. *Matsushita*, 475 U.S. at 586. If the evidence is merely colorable or is not significantly probative or is no more than a scintilla, summary judgment may be granted. *Anderson*, 477 U.S. at 249-250.

## BACKGROUND

The undisputed facts taken from the parties' Local Rule 56.1(a) & (b) statements of material facts (referred to herein as "Pl.'s 56.1" and "Def.'s 56.1") and exhibits are as follows.

Oblix is a corporation organized and existing under the laws of Delaware and is a citizen of California with its principal place of business in Cupertino, California. (Def.'s 56.1 ¶ 1.) Winiecki

is a resident and citizen of Illinois. (*Id.* ¶ 2.)

On or about September 12, 2000, Oblix hired Winiecki to be its Regional Sales Representative for the Central Region. (*Id.* ¶ 3.) On or about September 12, 2000, Winiecki received and signed Oblix's Employment, Confidential Information and Invention Assignment Agreement ("the Agreement"). (*Id.* ¶ 4.) Winiecki was told that she needed to sign the Agreement in order to commence her employment with Oblix. (Pl.'s 56.1 ¶ 25.) Only Winiecki signed the Agreement. (*Id.* ¶ 26.) Under the Agreement, Winiecki agreed that:

> any dispute or controversy arising out of or relating to any interpretation, construction, performance or breach of this Agreement, shall be resolved exclusively by binding arbitration to be held in Santa Clara, California, in accordance with the rules then in effect of the American Arbitration Association ["the AAA"]. The arbitrator may grant injunctions or other relief in such dispute or controversy. The decision of the arbitrator shall be final, conclusive and binding on the parties to the arbitration. Judgment may be entered on the arbitrator's decision in any court having jurisdiction. [Oblix and Winiecki] shall each pay one-half of the costs and expenses of such arbitration, and each . . . shall separately pay . . . counsel fees and expenses.

(Def.'s 56.1 Ex. B § 10A.) The Agreement also provided that:

> any dispute or controversy arising out of or relating to Section 1 of this Agreement or the amount of salary compensation, severance or other similar amount owing to me, shall be resolved through the arbitration procedure set forth in this Section 10B. The arbitrator shall be selected in accordance with the rules for arbitrator selection then in effect of [the AAA]. The arbitrator thereby selected shall, after consultation with [Oblix and Winiecki], set forth a timetable for the arbitration, along with a schedule of the pleadings and evidence to be submitted at each stage of the arbitration. After such pleadings and evidence have been submitted, and the arbitrator has reviewed them to his or her satisfaction, the arbitrator shall request [Oblix and Winiecki] to each submit to the arbitrator and exchange with each other [their] last offers. The arbitrator shall be limited to awarding only one or the other of the two offers submitted, provided, however, that if [Winiecki is] terminated for good cause, in no event shall the amount of the award be greater than the accrued but unpaid salary owing to [her] at the time of the termination of [her] employment relationship with [Oblix] plus a maximum of one additional month of salary for each full year of employment service up to an absolute maximum of three months of salary.

(*Id.* § 10B.) Section 10C of the Agreement provides that:

> [Winiecki] agree[s] that it would be impossible or inadequate to measure and calculate [Oblix's] damages from any breach of the covenants set forth in Sections 2, 3, and 5 herein. Accordingly, . . . if [Winiecki] breach[es] [Sections 2, 3, or 5 of the Agreement], [Oblix] will have available, in addition to any other right or remedy available, the right to obtain an injunction from a court of competent jurisdiction restraining such breach or threatened breach and to specific performance of any such provision of this Agreement. . . . no bond or other security shall be required in obtaining such equitable relief and [Winiecki] hereby consent[s] to the issuance of such injunction and to the ordering of specific performance.

(*Id.* § 10C.) The Agreement also provides that it "will be governed by the laws of the State of California" and that Winiecki "expressly consent[s] to the personal jurisdiction of the state and federal courts located in California for any lawsuit filed there against [her] by [Oblix] arising from or relating to this Agreement." (*Id.* § 11A.)

Under section 2 of the Agreement, entitled "Confidential Information", Winiecki agreed not to disclose confidential or proprietary information of Oblix or third parties to anyone and not to disclose her former or concurrent employer's proprietary information to Oblix. (Def.'s 56.1 Ex. B § 2.) Under section 3 of the Agreement, Winiecki agreed, in pertinent part, to (1) grant Oblix a "nonexclusive, royalty-free, irrevocable, perpetual, worldwide license to make, have made, modify, use and sell" any Oblix product that incorporated any invention by Winiecki and (2) assign to Oblix all intellectual property created during the period of her employment. (*Id.* § 3.) Under section 5 of the Agreement, Winiecki agreed that:

> at the time of leaving the employ of [Oblix], [she] will deliver to [Oblix] (and will not keep in [her] possession, recreate or deliver to anyone else) any and all devices, records, data, notes, reports, proposals, lists, correspondence, specifications, drawings, blueprints, sketches, materials, equipment, other documents or property, or reproductions of any aforementioned items developed by [her] pursuant to [her] employment with [Oblix] or otherwise belonging to [Oblix] . . . .

-4-

(*Id.* § 5.)

Section 11 of the Agreement provides that "[t]his Agreement sets forth the entire agreement and understanding between [the parties] relating to the subject matter herein and merges all prior discussions between [them]." (*Id.* § 11B.) Section 11 also provides that "[i]f one or more of the provisions in this Agreement are [sic] deemed void or unenforceable by law, then such provision or provisions will be enforced to the maximum extent permitted and the remaining provisions will be unaffected and will continue in full force and affect." (*Id.* § 11C.)

In April 2002, Oblix terminated Winiecki's employment. (Def.'s 56.1 ¶ 6.) Oblix asserts that it terminated Winiecki's employment because she failed to meet its expectations as a Regional Sales Manager, she was unable to achieve business objectives assigned to her and to adequately close business opportunities in her assigned territory[1]. Winiecki filed a charge of discrimination against Oblix with the Equal Employment Opportunity Commission ("EEOC"). (*Id.* ¶ 7.) In a letter dated June 20, 2002, counsel for Oblix requested that Winiecki submit her claims to arbitration in accordance with the Agreement. (*Id.* ¶ 8.) The June 20, 2002 letter also stated that "Should Ms. Winiecki choose to arbitrate her claims against Oblix, Oblix agrees to pay all fees and expenses of the arbitrator." (Def.'s 56.1 Ex. C.) On or about August 14, 2002, Winiecki received a Notice of Right to Sue from the EEOC concerning her charge of discrimination[2]. (Def.'s 56.1 ¶ 10.)

_____

[1]This assertion is made only in Oblix's memorandum in support of its motion and not in the statement of undisputed facts. Moreover, Oblix does not refer to any affidavit, part of the record or any material to support this assertion.

[2]It should be noted that in order to pursue the claims identified in the charge of discrimination, Winiecki was required to file suit on or before ninety days from receipt of the Notice of Right to Sue. *See* 42 U.S.C. § 2000e-5(f)(1) (2003) ("within ninety days after giving of such notice a civil action may be brought against the respondent named in the charge . . . by the person claiming to be aggrieved").

Rule 7 of the National Rules for the Resolution of Employment Disputes of the AAA[3] provides that "[t]he arbitrator shall have the authority to order such discovery by way of deposition, interrogatory, document production, or otherwise, as the arbitrator considers necessary to a full and fair exploration of the issues in dispute, consistent with the expedited nature of arbitration." (Def.'s 56.1 Ex. E at 6-7.) AAA Rule 22 provides that "[t]he parties shall bear the same burdens of proof and burdens of producing evidence as would apply if their claims and counterclaims had been brought in court." (*Id.* at 10.) AAA Rule 34 provides that (1) the award shall be in writing, signed by a majority of the arbitrators, and provide written reasons for the award unless the parties agree otherwise and (2) "[t]he arbitrator may grant any remedy or relief that the arbitrator deems just and equitable, including any remedy or relief that would have been available to the parties had the matter been heard in court". (*Id.* at 12.) Under the AAA Rules, if either party desires stenographic records of the arbitration proceedings, they must make arrangements directly with a private stenographer and bear the costs of the stenographer's attendance at the arbitration hearing. (Pl.'s 56.1 ¶ 23.)

On September 26, 2002, Oblix filed a complaint to compel arbitration with this Court. (Def.'s 56.1 ¶ 12.) On October 30, 2002, Winiecki filed a counterclaim against Oblix, alleging retaliation, sex discrimination and pregnancy discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended 42 U.S.C. § 2000(e) *et seq.*; breach of the Agreement regarding allegedly unpaid commissions; and a state law claim for unpaid commissions under of the Illinois Wage

---

[3]Federal Rule of Evidence 201 provides that a court may take judicial notice of facts that are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b). The AAA's National Rules for the Resolution of Employment Disputes are capable of accurate and ready determination under Rule 201(b), and Oblix has provided the AAA Rules to the Court. Therefore, the Court takes judicial notice of the AAA Rules.

Payment and Collection Act. (*Id.* ¶ 13.)

## DISCUSSION

Oblix argues that summary judgment is proper and that Winiecki's counterclaims should be dismissed because the Agreement is enforceable and all of Winiecki's claims relate to her employment or compensation, which she agreed to arbitrate pursuant to section 10A or 10B of the Agreement. Winiecki argues that the Court should deny the Motion for Summary Judgment and to Dismiss because the Agreement (1) does not require arbitration of her counterclaims, (2) fails to meet the requirements for validity of an arbitration agreement under California law, and (3) is unconscionable.

The Federal Arbitration Act ("the FAA") provides that:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or equity for the revocation of any contract.

9 U.S.C. § 2 (2002). The FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). Enforcement of arbitration agreements is not precluded by Title VII. *See Koveleskie v. SBC Capital Markets, Inc.*, 167 F.3d 361, 365 (7th Cir. 1999). However, under the FAA, an agreement to arbitrate may be unenforceable under general contract principles. 9 U.S.C. § 2. State law must, therefore, be considered to resolve such issues.

Pursuant to the choice of law provision of the Agreement, California law governs. Under California law, "[a]ll contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law." Cal. Civ. Code § 1668 (2003). California law also provides that "Any one [sic] may waive the advantage of a law intended solely for his benefit. But a law established for a public reason cannot be contravened by a private agreement." Cal. Civ. Code § 3513 (2003). Under California law,

> "The public policy against sex discrimination and sexual harassment in employment, moreover, is plainly one that inures to the benefit of the public at large rather than to a particular employer or employee." . . . It is indisputable that an employment contract that required employees to waive their rights . . . to redress sexual harassment or discrimination would be contrary to public policy and unlawful.

*Armendariz v. Found. Health Psychcare Servs., Inc.*, 6 P.3d 669, 680-81 (Cal. 2000) (quoting *Rojo v. Kliger*, 801 P.2d 373, 389 (Cal. 1990) (internal quotation marks omitted)).

"California law, like federal law, favors enforcement of valid arbitration agreements." *Armendariz*, 6 P.3d at 678. Statutory claims "are in fact arbitrable *if* the arbitration permits an employee to vindicate his or her statutory rights." *Armendariz*, 6 P.3d at 674. Under California law,

> an arbitration agreement is lawful if it "(1) provides for neutral arbitrators, (2) provides for more than minimal discovery, (3) requires a written award [that permits judicial review], (4) provides for all of the types of relief that would otherwise be available in court, and (5) does not require employees to pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration forum."

*Armendariz*, 6 P.3d at 674, 682 (quoting *Cole v. Burns Int'l Sec. Servs.*, 105 F.3d 1465, 1482 (D.C. Cir. 1997)).

The first criterion is whether the Agreement provides for neutral arbitrators. *Armendariz*,

6 P.3d at 682. Section 10A of the Agreement provides for the resolution of disputes arising out of the interpretation, construction, performance or breach of the Agreement by arbitration in accordance with the rules of the AAA. Section 10B provides for selection of the arbitrator according to the AAA Rules for arbitrator selection. AAA Rule 12 provides for the selection of neutral arbitrators. The Agreement meets the first criterion under *Armendariz*.

The second criterion is whether the Agreement provides for more than minimal discovery. *Armendariz*, 6 P.3d at 682. AAA Rule 7 provides that the arbitrator has the authority to order "such discovery . . . as the arbitrator considers necessary to a full and fair exploration of the issues in dispute." (Def.'s 56.1 Ex. E. at 6-7.) The mere fact that it is a neutral arbitrator rather than a United States District Court or Magistrate Judge deciding what, if any, limits should apply to discovery does not limit discovery to render an agreement unenforceable. Moreover, "when parties agree to arbitrate statutory claims, they also implicitly agree, absent express language to the contrary, to such procedures as are necessary to vindicate that claim." *Armendariz*, 6 P.3d at 684. Thus, the Agreement meets the second criterion under *Armendariz*.

The third criterion is whether the Agreement requires a written award, permitting limited judicial review. *Armendariz*, 6 P.3d at 674, 682. AAA Rule 34 provides for a written award unless the parties agree otherwise. Thus, the Agreement meets the third criterion under *Armendariz*.

The fourth criterion is whether the Agreement provides for the types of relief that would be available in court. Although the Agreement limits a potential award to

> only one or the other of the two offers submitted, provided, however, that if [Winiecki is] terminated for good cause, in no event shall the amount of the award be greater than the accrued but unpaid salary owing to [her] at the time of the termination of [her] employment relationship with [Oblix] plus a maximum of one additional month of salary for each full year of employment service up to an absolute

maximum of three months of salary[,]

(Def.'s 56.1 Ex. B § 10B), AAA Rule 34 provides for "any remedy or relief that the arbitrator deems just and equitable", including remedies that would have been available to the parties had the matter been heard in court. (Def.'s 56.1 Ex. E at 11-12.) Furthermore, AAA Rule 34 provides that the arbitrator may award such "other relief" as he or she deems appropriate. "Other relief" could include counsel fees and expenses, which Winiecki would be able to recover in court. Moreover, AAA Rule 34 provides that "the arbitrator shall, in the award, assess arbitration fees, expenses, and compensation as provided in Sections 38, 39, and 40 in favor of any party" and "shall have the authority to provide for the reimbursement of representatives' fees, in whole or in part, as part of the remedy." (Def.'s 56.1 Ex. E at 12.) Under the Agreement, all of the types of relief that would be available to Winiecki in court are available to her in arbitration. Thus, the Agreement meets the fourth criterion of *Armendariz*.

The fifth criterion is whether the Agreement "require[s] employees to pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration forum." *Armendariz*, 6 P.3d at 682. The Agreement also provides that the parties "shall each pay one-half of the costs and expenses of such arbitration . . . and each . . . shall separately pay . . . counsel fees and expenses." (Def.'s 56.1 Ex. B § 10A.) The *Armendariz* court

> conclude[d] that when an employer imposes mandatory arbitration as a condition of employment, the arbitration agreement or arbitration process cannot generally require the employee to bear a *type* of expense that the employee would not be required to bear if he or she were free to bring the action in court.

6 P.3d at 687. However, in a letter to Winiecki, Oblix has stated that it will pay such costs and expenses. The Agreement provides that modifications of the Agreement are effective if they are (1)

in writing and (2) signed by the party to be charged. (Def.'s 56.1 Ex. B § 11B.) Here, Oblix's statement that it will bear the costs of arbitration is an effective modification of the Agreement because it was in writing and signed by Oblix, the party to be charged. Under the Agreement, Winiecki is not required to pay any costs and expenses as a condition of access to arbitration. Thus, the Agreement meets the fifth criterion under *Armendariz*. Therefore, the Agreement is lawful and enforceable under *Armendariz*.

However, under California law, unconscionability is grounds for refusing to enforce an otherwise valid arbitration agreement.

> If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

Cal. Civ. Code 1670.5 (2003). Unconscionability is a ground for refusing to enforce a contract generally and, therefore, is a ground for refusing to enforce an arbitration agreement under the FAA. *See* 9 U.S.C. § 2; *see also Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996) (noting that unconscionability invalidates an arbitration agreement under the FAA). Unconscionability is a question of law that is determined based upon factual inquiries. *Am. Bankers Mortgage Corp. v. Federal Home Loan Mortgage Corp.*, 75 F.3d 1401, 1412 n.8 (9th Cir. 1996) (construing California law). "Only where 'the extrinsic evidence [is] undisputed' will the court be able to determine unconscionability absent predicate findings of fact." *McCollum v. XCare.net, Inc.*, 212 F. Supp. 2d 1142, 1150 (construing California law) (quoting *Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*, 107 Cal. Rptr. 2d 645, 655 (Cal. Ct. App. 2001)).

"Unconscionability analysis begins with an inquiry into whether the contract is one of

-11-

adhesion." *Armendariz*, 6 P.3d at 689. A contract of adhesion is a standardized contract that is "'imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it.'" *Armendariz*, 6 P.3d at 689 (quoting *Neal v. State Farm Ins. Cos.*, 10 Cal. Rptr. 781, 784 (Cal. Ct. App. 1961)). If the contract is determined to be adhesive, the court must determine whether other factors render the contract unenforceable. *Armendariz*, 6 P.3d at 689. Under California law,

> unconscionability has both a "procedural" and a "substantive" element, the former focusing on "oppression" or "surprise" due to unequal bargaining power, the latter on "overly harsh" or "one-sided" results. . . . The prevailing view is that [procedural and substantive unconscionability] must both be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability. . . . Essentially a sliding scale is invoked which disregards the regularity of the procedural process of the contract formation, that creates the terms, in proportion to the greater harshness or unreasonableness of the substantive terms themselves. . . . In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable . . . .

*Armendariz*, 6 P.3d at 690 (alterations in original) (internal quotation marks and citations omitted). A unilateral obligation to arbitrate is unconscionable. *Armendariz*, 6 P.3d at 692. An arbitration agreement is substantively unconscionable where "[t]he employee pursuing claims against the employer ha[s] to bear not only with the inherent shortcomings – limited discovery, limited judicial review, limited procedural protections – but also significant damage limitations imposed by the arbitration agreement" while the "employer . . . [is] not subject to these disadvantageous limitations and ha[s] written into the agreement special advantages, such as a waiver of jurisdictional objections by the employee if sued by the employer." *Armendariz*, 6 P.3d at 691. However, unilateral arbitration is not unconscionable if the party with superior bargaining power has a reasonable justification that explains why it requires additional protection. *Armendariz*, 6 P.3d at 694.

There is a genuine issue of material fact as to whether the Agreement is adhesive. Oblix does not dispute the fact that Winiecki had to sign the Agreement as a condition of employment. Moreover, Oblix has not presented any evidence to determine if the parties negotiated whether Winiecki would sign the Agreement. Winiecki admits that she discussed possible employment with Oblix for four months before the Agreement was presented to her. However, the requirement that the employee execute an arbitration agreement as a condition of employment is not *per se* unconscionable. *EEOC v. Luce, Forward, Hamilton & Scripps LLP*, 303 F.3d 994, 1005 (9th Cir. 2002) (construing California law).

There is a genuine issue of material fact as to whether the Agreement is substantively unconscionable under California law. The Agreement appears one-sided. It lists several promises that Winiecki is making to Oblix without listing any corresponding promises that Oblix is making to Winiecki. Sections 10A and 10B require Winiecki to arbitrate any disputes or controversies arising out of or relating to (1) the interpretation, construction or performance of the Agreement and (2) Section 1 of the Agreement or the amount of salary compensation, severance or other similar amount owing to Winiecki. Section 10C of the Agreement expressly exempts from arbitration claims by Oblix that Winiecki breached Sections 2, 3, or 5 of the Agreement. Section 10 of the Agreement effectively requires Winiecki to arbitrate any claim that she might bring against Oblix while exempting breaches of Sections 2, 3, and 5, the only types of claims that Oblix might bring against Winiecki. Oblix may litigate such claims against Winiecki in court. *See Mercuro v. Superior Court*, 116 Cal. Rptr. 2d 671 (Cal. Ct. App. 2002); *Stirlen v. Supercuts, Inc.*, 60 Cal. Rptr. 2d 138, 151 (Cal. Ct. App. 1997) ("The mandatory arbitration requirement can only realistically be seen as applying primarily if not exclusively to claims arising out of the termination of employment, which

-13-

are virtually certain to be filed against, not by [the employer].""). Moreover, Oblix has not identified any provision of the Agreement that imposes upon it an obligation to arbitrate.

Furthermore, as noted above, Winiecki expressly consents to the personal jurisdiction of the state and federal courts of California. These terms were written into the Agreement by Oblix to their apparent advantage. Oblix has not presented any evidence of reasonable justification for the apparent lack of an obligation to arbitrate its claims against Winiecki. *See Armendariz*, 6 P.3d at 694 ("We emphasize that if an employer does have a reasonable justification for the arrangement – i.e., a justification grounded in something other than the employer's desire to maximize its advantage based on the perceived superiority of the judicial forum – such an agreement would not be unconscionable."). Thus, there is a genuine issue of material fact as to whether the Agreement is unconscionable under California law and, therefore, unenforceable under the FAA. *See* 9 U.S.C. § 2. Therefore, Oblix's Motion for Summary Judgment and to Dismiss Winiecki's Counterclaims is denied.

## CONCLUSION

For the reasons stated herein, Oblix's Motion for Summary Judgment and to Dismiss is denied.

**IT IS SO ORDERED.**

John W. Darrah, Judge
United States District Court

Date: *April 23, 2003*

-14-